THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| K.MIZRA LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 2:21-CV-00305-JRG |
| | § | |
| HEWLETT PACKARD ENTERPRISE | § | |
| COMPANY and ARUBA NETWORKS, | § | |
| LLC, | § | |
| | § | |
| Defendants. | § | |

## CLAIM CONSTRUCTION MEMORANDUM AND ORDER

Before the Court is the Opening Claim Construction Brief (Dkt. No. 117) filed by Plaintiff K.Mizra LLC ("Plaintiff" or "K.Mizra"). Also before the Court are the response (Dkt. No. 124) filed by Defendants Hewlett Packard Enterprise Company and Aruba Networks, LLC ("Defendants" or "HPE") and Plaintiff's reply (Dkt. No. 126).

### I. BACKGROUND

Plaintiff asserts United States Patents No. 8,234,705 ("the '705 Patent") and 9,516,048 ("the '048 Patent") (collectively, the "patents-in-suit"). (Dkt. No. 117, Exs. A & B.)

The '705 Patent, titled "Contagion Isolation and Inoculation," issued on July 31, 2012, and bears an earliest priority date of September 27, 2004. Plaintiff submits that the '705 Patent "discloses methods and systems for securing a computer network by detecting viruses and/or vulnerabilities on a computer attempting to access a secure network." Dkt. No. 117 at 2. The Abstract of the '705 Patent states:

> Contagion isolation and inoculation is disclosed. In some embodiments, a request is received from a host, e.g., via a network interface, to connect to a protected network. It is determined whether the host is required to be quarantined. If the host is required to be quarantined, the host is provided only limited access to the

protected network. In some embodiments, a quarantined host is permitted to access the protected network only as required to remedy a condition that caused the quarantine to be imposed, such as to download a software patch, update, or definition; install, remove, and/or configure software and/or settings as required by a policy; and/or to have a scan or other diagnostic and/or remedial operation performed. In various embodiments attempts to communicate with hosts not involved in remediation are redirected to a quarantine system, such as a server, that provides information, notices, updates, and/or instructions to the user.

The '048 Patent, titled "Contagion Isolation and Inoculation via Quarantine," issued on December 6, 2016, and bears an earliest priority date of September 27, 2004. Plaintiff submits that the "specification is nearly identical to that of the '705 Patent with the exception of the 'Background of the Invention' section and one introductory paragraph found in the 'Detailed Description,'" and "[t]he two Patents-in-Suit thus disclose substantially the same technology, with the asserted claims of each containing nearly identical language concerning disputed terms." Dkt. No. 117 at 3.

## II.  LEGAL PRINCIPLES

It is understood that "[a] claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999). Claim construction is clearly an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

"In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015) (citation omitted). "In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about

that extrinsic evidence. These are the 'evidentiary underpinnings' of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal." *Id.* (citing 517 U.S. 370).

To ascertain the meaning of claims, courts look to three primary sources: the claims, the specification, and the prosecution history. *Markman*, 52 F.3d at 979. The specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. *Id.* A patent's claims must be read in view of the specification, of which they are a part. *Id.* For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims. *Id.* "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of the patentee's invention. Otherwise, there would be no need for claims. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc). The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). Although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This Court's claim construction analysis is substantially guided by the Federal Circuit's decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). In *Phillips*, the court set forth several guideposts that courts should follow when construing claims. In

3

particular, the court reiterated that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Id.* at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To that end, the words used in a claim are generally given their ordinary and customary meaning. *Id.* The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1313. This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention and that patents are addressed to, and intended to be read by, others skilled in the particular art. *Id.*

Despite the importance of claim terms, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument." *Id.* at 1315 (quoting *Markman*, 52 F.3d at 978). Thus, the *Phillips* court emphasized the specification as being the primary basis for construing the claims. *Id.* at 1314–17. As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878). In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and

> intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*Phillips*, 415 F.3d at 1316. Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation. Like the specification, the prosecution history helps to demonstrate how the inventor and the United States Patent and Trademark Office ("PTO") understood the patent. *Id.* at 1317. Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings. *Id.* Nevertheless, the prosecution history is intrinsic evidence that is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims. *Id.*; *see Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) (noting that "a patentee's statements during prosecution, whether relied on by the examiner or not, are relevant to claim interpretation").

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony. The *en banc* court condemned the suggestion made by *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes. *Phillips*, 415 F.3d at 1319–24. According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." *Id.* at 1321.

*Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter. *Id.*

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. Instead, the court assigned dictionaries a role subordinate to the intrinsic record. In doing so, the court emphasized that claim construction issues are not resolved by any magic formula. The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language. *Id.* at 1323–25. Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant.

### III.  AGREED TERMS

In their August 25, 2023 P.R. 4-3 Joint Claim Construction and Prehearing Statement (Dkt. No. 106, Ex. A, at 1) and in their October 24, 2023 P.R. 4-5(d) Joint Claim Construction Chart (Dkt. No. 128, Ex. A, at 1 & 7), the parties submitted the following agreed-upon constructions:

| Term | Construction |
| --- | --- |
| "trusted platform module"<br><br>('705 Patent, Claims 1, 12, 19;<br>'048 Patent, Claims 1, 10, 17) | "a secure cryptoprocessor that can store cryptographic keys and that implements the Trusted Platform Module specification from the Trusted Computing Group" |
| "trusted computing base"<br><br>('705 Patent, Claims 1, 12, 19;<br>'048 Patent, Claims 1, 10, 17) | "hardware or software that has been designed to be a part of the mechanism that provides security to a computer system" |

## IV. DISPUTED TERMS

### A. "attestation of cleanliness"

| "attestation of cleanliness" ('705 Patent, Claims 1, 10, 12, 17, 19; '048 Patent, Claims 1, 8, 10, 15, 17, 19) ||
|---|---|
| **Plaintiff's Proposal** | **Defendant's Proposed Construction** |
| Plain and ordinary meaning; no Court construction necessary | "attestation of cleanliness received from the trusted computing base"[1] <br><br> Should the Court prefer to enter a construction of plain and ordinary for "attestation of cleanliness," HPE agrees to the extent that it is limited by K.Mizra's repeated arguments that the attestation of cleanliness is received from the trusted computing base. |

(Dkt. No. 106, Ex. A, at 4; Dkt. No. 128, Ex. A at 2 & 8.)

(1) The Parties' Positions

Plaintiff argues that "[n]o formal construction here is needed as both 'attestation' and 'cleanliness' are well-known terms." (Dkt. No. 117, at 1–2.) Plaintiff also argued that Defendants' original proposed construction ("the first host's assertion that it is not infested and has an updated patch") was unduly narrow. (*See id.* at 1–2 & 10–11.)

Defendants respond:

[B]ased on admissions that K.Mizra made in its Brief to argue its proposed constructions, HPE can agree to K.Mizra's proposed construction[s], with a minor caveat based on those admissions. Specifically, K.Mizra made the following admissions that the "attestation of cleanliness" is sent by the "trusted computing base":

- "the trusted computing base returns an attestation of cleanliness;" (Brief at 1)

---

[1] Defendants previously proposed: "The first host's assertion that it is not infested and has an updated patch." (Dkt. No. 106, Ex. A, at 4.)

7

- "[t]he verification is made by way of an attestation of cleanliness from a trusted computing base;" (*id.* at 3)

- "[t]he claim states that the attestation of cleanliness is provided by the trusted computing base . . . ." (*id.* at 9).

HPE therefore incorporates these admissions into the claim language for the construction of attestation of cleanliness . . . .

(Dkt. No. 124, at 1–2.)

Plaintiff replies: "[T]he Asserted Claims do not dictate from where the 'attestation of cleanliness' originates. It could be received directly from the 'trusted computing base,' indirectly from the 'trusted computing base,' or directly or indirectly from something or somewhere else." (Dkt. No. 126, at 1.) Plaintiff argues that Defendants' attempted reliance on Plaintiff's claim construction arguments as purported admissions should be rejected and that Plaintiff's proposed construction, "which [is] based exclusively upon intrinsic evidence, should now be adopted." (*Id.* at 2.)

(2) Analysis

Claim 1 of the '705 Patent, for example, recites "attestation of cleanliness" in relation to a "trusted computing base," and the parties have agreed that "trusted computing base" means "hardware or software that has been designed to be a part of the mechanism that provides security to a computer system." (Dkt. No. 128, Ex. A, at 1 & 7.) Claim 1 of the '705 Patent recites (emphasis added):

> 1. A method for protecting a network, comprising:
> detecting an insecure condition on a first host that has connected or is attempting to connect to a protected network, wherein detecting the insecure condition includes contacting a *trusted computing base* associated with a trusted platform module within the first host, receiving a response, and determining whether the response includes a valid digitally signed *attestation of cleanliness*, wherein the valid digitally signed *attestation of cleanliness* includes at least one of an attestation that the *trusted computing base* has ascertained that the first host is not infested, and an attestation that the *trusted computing base* has ascertained the

8

> presence of a patch or a patch level associated with a software component on the first host;
>
> when it is determined that the response does not include a valid digitally signed *attestation of cleanliness*, quarantining the first host, including by preventing the first host from sending data to one or more other hosts associated with the protected network, wherein preventing the first host from sending data to one or more other hosts associated with the protected network includes receiving a service request sent by the first host, serving a quarantine notification page to the first host when the service request comprises a web server request, and in the event the service request comprises a DNS query, providing in response an IP address of a quarantine server configured to serve the quarantine notification page if a host name that is the subject of the DNS query is not associated with a remediation host configured to provide data usable to remedy the insecure condition; and
>
> permitting the first host to communicate with the remediation host.

In its Opening Claim Construction Brief, Plaintiff stated: "The claim states that *the attestation of cleanliness is provided by the trusted computing base*, not by the first host." (Dkt. No. 117 at 9 (emphasis added).)

Plaintiff argues that "Defendants misconstrue attorney statements in an attempt to gin-up 'admissions' of a type that can change the plain and ordinary meaning of unambiguous claim terms," and Plaintiff submits that "attorney arguments, even if clear and directly on point (certainly not what we have here), *can never* be used to change the unambiguous language of patent claims." (Dkt. No. 126 at 1–2 (citing *Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1584–85 (Fed. Cir. 1996)).)

Notwithstanding Plaintiff's response, its statement, quoted above, is consistent with the context in which the above-reproduced claim uses the term "attestation of cleanliness." This is so because the claim recites receiving a "response" from a "trusted computing base," and "the response includes a valid digitally signed attestation of cleanliness." The other claims at issue also contain similar recitations. *See* '705 Patent, Cls. 10, 12, 17, 19; *see also* '048 Patent, Claims 1, 8, 10, 15, 17, 19. To whatever extent the claims are deemed to lack an express recital that the

9

"response" is received from the "trusted computing base," this is implied by the recital of "contacting a trusted computing base associated with a trusted platform module within the first host" being immediately followed by "receiving a response."

Since other claim language thus already recites that the "attestation of cleanliness" is received from the "trusted computing base," this requirement is noted but is not part of the term "attestation of cleanliness" itself, and including this requirement in the construction thereof would tend to confuse rather than clarify the claims. No further construction is necessary. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy."); *see also Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1318–19 (Fed. Cir. 2016) (citing *Vivid*, 200 F.3d at 803); *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy."); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010) ("Unlike *O2 Micro*, where the court failed to resolve the parties' quarrel, the district court rejected Defendants' construction."); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1326 (Fed. Cir. 2012); *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015); *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 977–79 (Fed. Cir. 2021).

In summary, to avoid creating redundancy the Court hereby construes **"attestation of cleanliness"** to have its **plain meaning** while noting for the parties that the Court expressly finds

the "attestation of cleanliness" must be received from the "trusted computing base" in the patent claims at issue.

## V.  CONCLUSION

The Court adopts the constructions set forth in this opinion for the above-addressed terms of the patents-in-suit.

The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.  Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**So ORDERED and SIGNED this 21st day of November, 2023.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE